UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Eric Douthitt

     v.                          Civil No. 20-cv-451-JD
                                   Opinion No. 2020 DNH 037
Andrew M. Saul, Commissioner
Social Security Administration


O R D E R

Eric Douthitt seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision that found he became disabled as of August 23, 2018, but denied his application for disability insurance benefits and supplemental security income based on an alleged disability before that date.  In support, he contends that the Administrative Law Judge ("ALJ") made legal and factual errors in finding that he was not disabled until August of 2018.  The Commissioner moves to affirm the decision.


Standard of Review

For purposes of review, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).  The court defers to the ALJ's factual findings if they are supported by substantial evidence.  § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153

(2019).  Substantial evidence is "more than a mere scintilla"
and means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Id. at 1154.  The
court must affirm the ALJ's findings, even if the record could
support a different conclusion, when "a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support [the ALJ's] conclusion." Irlanda Ortiz
v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.
1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir.
2018).

In making a disability determination, an ALJ follows a
five-step process, asking "questions that are sequential and
iterative, such that the answer at each step determines whether
progression to the next is warranted." Sacilowski, 959 F.3d at
433.  The steps are as follows:

> (Step 1) whether the claimant is currently engaging in
> substantial gainful activity; if not, (Step 2) whether
> the claimant has a severe impairment; if so, (Step 3)
> whether the impairment meets or medically equals an
> entry in the Listing of Impairments; if not, (Step 4)
> whether the claimant's residual functional capacity
> ("RFC") is sufficient to allow her to perform any of
> her past relevant work; and if not, (Step 5) whether,
> in light of the claimant's RFC, age, education, and
> work experience, she can make an adjustment to other
> work available in the national economy.

Id. (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) &
416.920(a)(4)(i)-(v)).  The claimant bears the burden of showing
he is disabled through the first four steps, but at Step 5 the

Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do.  Id. at 434.

## Background

Under the local rules in this district, the claimant is required to file a statement of material facts, with each fact supported by citation to the administrative record.  LR 9.1(c). The Commissioner then files a statement of material facts but only to the extent facts were omitted from the claimant's statement.  In this case, Douthitt included a section in the memorandum in support of the motion to reverse, titled "Factual Allegations," which includes statements that are not supported by citations to the record.  To the extent the statements are not properly supported, they are not considered.[1]  In response, the Commissioner filed a properly supported statement of material facts.

Douthitt alleges that he became disabled in March of 2012. His application was denied initially, and after a hearing the ALJ issued an unfavorable decision.  His insured status for disability insurance benefits ended on September 30, 2017.  The

---

[1] The court notes that Douthitt is represented by counsel. The factual statement provided is insufficient.  In addition to the facts that are not supported by any citation to the record, in other instances, the page of the record cited does not support the fact stated.

ALJ determined that he became disabled on August 23, 2018, after his insured status expired.

Douthitt previously worked at Sturm Ruger Manufacturing for seventeen years.  He had surgery for carpal tunnel problems and had difficulty with his left shoulder.  He had arthroscopic surgery on his left shoulder in late June of 2010, but experienced continuing pain well out of proportion to the injury and procedure.  He was allowed to return to light duty work in September of 2010.[2]  At follow-up appointments, Douthitt continued to complain of pain in his left shoulder, but on examination he was found to have a full range of motion and other normal results.  Independent medical examinations recommended conservative treatment.

He had a second surgery on his left shoulder in September of 2011.  The treatment notes post surgery indicate improvement and full range of motion.  Douthitt's employment was terminated on March 26, 2012.

He was examined in May of 2012 for pain in his left shoulder.  The examining provider, Cecilia Vicuna-Keady, DNP, APRN, FNP, found that Douthitt had normal motor strength,

---

[2] In his factual statement, Drouthitt states that he was given a note to return to light duty work in March of 2012, but the page of the record that he cites is a treatment note from September of 2010.

sensation, and gait.[3]  In June, Douthitt reported that his pain
was slowly improving, and on examination he was found to have
full motion but a decrease in strength.  Subsequent physical
examinations produced reports of normal motor strength and range
of motion despite his complaints of pain in his shoulders.[4]  At
medical appointments in 2012 and 2013, Douthitt reported that he
was focusing on his art and was earning income from his artwork.

     In July of 2013, Douthitt was examined by Dr. Robert
Bassett for reevaluation of his ability to work.  Dr. Bassett
found on examination that his left shoulder was nearly normal
although he had pain on certain tests.  Douthitt had full range
of motion in both shoulders.  Dr. Bassett provided a note that
allowed him to return to work with no use of his left arm.
During a follow-up examination in June of 2015, Dr. Bassett

———————————

     [3] Douthitt refers to NP Vicuna-Keady as "Dr. Keady", but the
record shows that her name is Vicuna-Keady and she is a nurse
practitioner.

     [4] Douthitt states that Dr. Houde of Concord Orthopedics
found that he would never be without pain and cites page 705 of
the administrative record in support.  The medical record at
page 705, however, was prepared and signed by a physician's
assistant, Brian Lantz, PA-C, on January 10, 2013.  Lantz wrote:
"It is clear that Eric will never be without pain complaints in
the left shoulder," which is part of the history of his
symptoms.  On examination, however, PA-C Lantz found that
Douthitt could "actively place his arm throught fulll [sic] ROM,
even able to internally rotate to L3."  Admin. Rec. at 705.  In
addition, it appears that PA-C Lantz is employed at Valley
Regional Orthopeadics, not Concord Orthopeadics.

found that Douthitt had nearly full range of motion, strong rotation, no instability, and no sign of weakness.

Dr. Gregory Korgeski did a mental health evaluation in December of 2013 for the New Hampshire Disability Determination Service.  His diagnostic impression was that Douthitt had depression, not otherwise specified, and panic disorder, not otherwise specified.  Dr. Korgeski suggested that Douthitt might be assessed for memory or learning abilities and that he might profit from therapy.  He found that Douthitt had the ability to function with only slight limitations.

Douthitt was diagnosed with diabetes in 2016.  He reported during a diabetes management meeting that his neuropathy would be better if he remembered to take his midday dose of medication.

In August of 2016, Douthitt had a consultative examination with Dr. Peter C. Loeser.  Dr. Loeser found that Douthitt had normal findings, including normal range of motion in his left shoulder.  He also found nothing remarkable in his examination of Douthitt's legs, including no edema.  Douthitt was able to move around during the examination without pain, impairments, or deficits.  Dr. Loeser found that Douthitt had left shoulder pain and mild diabetic neuropathy.

Douthitt reported right shoulder pain during an appointment with NP Vicuna-Keady in July of 2017.  NP Vicuna-Keady found

6

that he had a full range of motion with pain.  At subsequent appointments she found a more limited range of motion.  X-rays of his right shoulder were normal.  Douthitt stated during a medical appointment that Aleve helped with the pain.  In 2018, Douthitt reported that he was walking daily.

A hearing was held on Douthitt's applications for benefits on August 13, 2019.  Douthitt was represented by counsel at the hearing and testified.  Dr. William Kwock, MD, a specialist in orthopedic surgery, testified as a medical expert.  Ruth Baruch testified as a vocational expert.

Based on his review of Douthitt's records, Dr. Kwock testified that Douthitt had a chronic shoulder impingement in his left shoulder and had undergone two routine arthroscopic procedures for decompression.[5]  He explained that there were no radiology findings about his shoulder and that the tests done on Douthitt's shoulder were based on his response to whether he felt pain when his shoulder was moved in certain ways.  Dr. Kwock also noted the post-operative reports that Douthitt had a full range of motion in his left shoulder and subsequent examination reports with the same results.  Dr. Kwock discussed Douthitt's diabetes and thought that the record did not show a likelihood for severe peripheral neuropathy.

---

[5] Dr. Kwock put the word "impingement" in quotes but was not asked to explain that designation.

Dr. Kwock testified that Douthitt's records would support an ability to work at the light exertional level.  He found that Douthitt could sit for a full eight-hour work day and could stand and walk for six hours out of the day.  He limited Douthitt to only frequently lifting overhead with his left arm.

The ALJ posed a hypothetical to the vocational expert that described a person who could do light work with additional limitations.  The vocational expert testified that, based on the hypothetical, Douthitt's past work as a collator was available. She also testified about other jobs that he could do.

The ALJ issued her decision on October 1, 2019.  She found that Douthitt had severe impairments of diabetes mellitus, peripheral neuropathy, obesity, degenerative changes of the cervical spine, obstructive sleep apnea, depression, anxiety, and left shoulder impingement.  Despite those impairments, she found that Douthitt retained the functional capacity to perform light work with additional limitations, including an opportunity to change positions, move around, or stretch two or three times in an hour; no climbing, kneeling, or crawling; and only occasional reaching with his left arm.

Based on that RFC and the vocational expert's testimony, the ALJ concluded that prior to August 23, 2018, there were jobs in the national economy that Douthitt could do.  She further found that as of August 23, 2018, Douthitt's age category

8

changed so that there would then have been no jobs that he could
do.  The ALJ concluded that Douthitt was disabled after August
23, 2018, but not before.  The ALJ issued a revised decision on
October 1, 2019, in which she found that for purposes of his
Title II claim he had not established that he was disabled
before his last insured date but also found that he became
disabled for purposes of his Title XVI claim on August 23, 2018.

Douthitt sought review by the Appeals Council, which was
denied on February 14, 2020, making the ALJ's decision the final
decision of the Commissioner.

## Discussion

In his motion to reverse and remand, Douthitt contends that
the ALJ erred in her evaluation of the effects of his pain, in
weighing the medical opinions, and in assessing his RFC.  The
Commissioner moves to affirm the Commissioner's decision.
Douthitt filed a response to the Commissioner's motion.[6]

---

[6] In his response, Douthitt states, citing page 83 of the
administrative record, that athletes are treated based on the
tests that Dr. Kwock deemed to be subjective and asks the court
to take judicial notice "that athletes are given excellent care
in our society."  Doc. 12, ¶ 24.  On page 83, Dr. Kwock
testified about tests used by sports medicine doctors to
determine whether there is impingement and what an MRI would
show.  The issue in this case is whether Douthitt was disabled
by his impairments, not whether he received excellent care.  The
request for judicial notice is denied.

A.  Evaluation of Alleged Symptoms

The first issue Douthitt raises appears to be based on a misunderstanding of the ALJ's decision and the controlling legal principles.  Douthitt contends that the ALJ made a legal error in assessing his impairments for purposes of the RFC assessment. Specifically, Douthitt perceives a contradiction in the ALJ's finding that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision."  Admin. Rec. at 23.

As the ALJ stated in her decision, she was required to follow a two-step process to assess a claimant's impairments. 20 C.F.R. § 404.1529[7]; Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016).  At the first step, she must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms the claimant alleges.  At the second step, she evaluates the intensity, persistence, and limiting effects of those symptoms to determine if and how they limit the claimant's work activities.  See, e.g., Discordia v. Saul, 2021 DNH 028, 2021 WL

---

[7] Because the administrative regulations applicable to Title II and Title XVI are the same in all relevant respects, the Title II regulations will be cited for both.  See Sullivan v. Zevley, 493 U.S. 521, 525, n.3 (1990).

321236, at *5 (D.N.H. Feb. 1, 2021) (citing §§ 404.1529,
416.927, & SSR 16-3p).

Douthitt appears to be confused by the two-step process and
misunderstands the import of the first step.  He contends that
ALJ's determination was based on legal error:  "The Judge's
decision, beginning page 14, found the medically determinable
impairments could reasonably be expected to cause his symptoms,
page 23 but does not find them fully supported in contradiction
of the law and the regulations."  Doc. 7-1, ¶ 25.  At the first
step, the ALJ determined that Douthitt's impairments could
reasonably be expected to cause the symptoms that he alleged.
The ALJ did not find, as Douthitt appears to argue, that the
medical evidence in the record is consistent with the alleged
severity, persistence, and limiting effects of his symptoms.

The ALJ properly applied the two-step process in Douthitt's
case.  Because the ALJ applied the correct legal standard in
assessing Douthitt's RFC, he has not shown the legal error that
he claims.

B.  Statements About Symptoms

Douthitt also challenges the basis for the ALJ's
determination that his statements about the severity,
persistence, and limiting effects of his symptoms were not fully
supported by the record.  SSR 16-3p provides guidance for "the

proper way for an ALJ to assess a claimant's symptoms, including
pain, under 20 C.F.R. §§ 404.159(c)(3), 416.929(c)(3)." Coskery
v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018).  Under SSR 16-3p,
the ALJ considers the entire record, including objective medical
evidence, the claimant's statements about his symptoms,
information provided by medical sources and others, and other
relevant evidence in the record to assess the claimant's
statements about his symptoms.  Id.


   1.  Lack of Treatment

   Douthitt notes that Dr. Kwock commented on the lack of
objective test results in the record and that the testing that
was done was based on Douthitt's subjective statements of pain.
Douthitt interprets Dr. Kwock's testimony to mean that the lack
of objective testing was due to his failure to seek treatment
for his pain.  Based on that misperception, Douthitt argues that
the ALJ should have considered the factors provided in SSR 16-3p
that pertain to how an ALJ evaluates the record when a claimant
has not sought treatment to the extent that would be expected
for his subjective complaints.  See SSR 16-2p, at *8-*9.

   The ALJ did not consider a lack of treatment as a reason
for finding that Douthitt's complaints of pain were not fully

supported by the record.[8]  Therefore, she had no reason to
consider the cited factors in SSR 16-3p.  While Dr. Kwock
commented about the absence of objective test results in the
record, his point was that the record did not provide an
objective basis to support Douthitt's claimed symptoms.  There
is no suggestion that the lack of objective testing was the
result of a lack of treatment, and the record shows that
Douthitt consistently sought medical treatment during the
relevant period.  Therefore, Douthitt has not shown that the
factors provided in SSR 16-3p to evaluate a lack of treatment
are relevant to the ALJ's evaluation.

### 2.  Daily Activities

Douthitt contends that the ALJ did not properly consider
his daily activities in assessing his allegations of severe
neuropathic pain due to diabetes.  Under § 404.1529(c), the ALJ
considers the claimant's daily activities, along with other
evidence, in assessing the effects of his symptoms.  SSR 16-3p,
at *7.

The ALJ noted that Douthitt had only mildly decreased fine
touch sensation in his feet when he was examined by Dr. Loeser

---

[8] The ALJ did note that NP Vicuna-Keady suggested a referral
to a shoulder specialist but Douthitt refused.  Douthitt,
however, does not contest that issue.

in August of 2016.  He was able to walk without pain.  Douthitt
also reported that he had not taken his medication for
neuropathy that morning.  The ALJ noted that he reported to
health care providers that he dances and does housework for
exercise and that he shops with his wife and walks daily.  He
also reported doing artwork consistently.

    Although Douthitt argues that he experiences pain when
doing those activities, that was not included in the reports the
ALJ relied on.  Further, the ALJ considered his testimony about
pain and his activities.  Therefore, the ALJ's assessment was
not erroneous.

### 3.  Other Factors for Assessing Symptoms

    Douthitt argues that the ALJ mentioned the factors for
assessing pain, known as the Avery factors, in only a conclusory
manner.  The Avery factors are:  "(1) the claimant's daily
activities; (2) the location, duration, frequency, and intensity
of the pain or symptom; (3) any precipitating and aggravating
factors; (4) the effectiveness of any medication currently or
previously taken; (5) the effectiveness of non-medicinal
treatment; (6) any other self-directed measures used to relieve
pain; and (7) any other factors concerning functional
limitations or restrictions." Discordia, 2021 WL 321236, at *5.
An ALJ is not required to address each factor as long as the

14

decision states the reasons for the weight given to the claimant's allegations of symptoms, the decision is consistent with and supported by the record evidence, and the decision is clear as to how the claimant's symptoms were evaluated.  Id.

The ALJ addressed Douthitt's alleged symptoms and the medical evidence pertaining to them on pages 24 through 28 of the administrative record.  In that discussion, the ALJ considered Douthitt's allegations of depression and anxiety and of shoulder pain and neuropathic pain.  She reviewed the treatment and evaluations he had received, the medications he was taking, and the opinion evidence.  She also considered other diagnoses that Douthitt had received.  She explained her reasoning as to the severity of the symptoms alleged.  In conclusion, the ALJ found that Douthitt had the RFC to do light work with certain additional limitations.

Douthitt has not shown any error in the ALJ's evaluation of his symptoms and pain under the governing law and in light of the record evidence.

C.  Medical Opinions

Douthitt challenges the weight the ALJ gave to the medical opinion evidence.  An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  "Medical opinions are

statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1).  The ALJ evaluates medical opinions based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system.  § 404.1527(c); see also Brunnell v. Commissioner of Social Security, 18-cv-569-LM, 2019 WL 4201068, at *4 (D.N.H. Sept. 5, 2019).

   1.   Dr. Kwock[9]

   Douthitt contends that the ALJ erred in relying on the opinions provided by Dr. Kwock but the grounds are not clear. Douthitt does not dispute Dr. Kwock's qualifications.  It appears that his primary issue is Dr. Kwock's statements about the lack of objective test results to confirm Douthitt's

---

   [9] Douthitt refers to Dr. Kwock as Dr. Kwork.

allegations of pain.  Douthitt has not shown that Dr. Kwock was
wrong about the lack of objective testing or that his opinion is
undermined by that observation.

To the extent Douthitt argues that Dr. Kwock disagrees with
the treatment he received for his shoulder condition, that does
not appear to be supported by the record.  Dr. Kwock
acknowledges the treatment that Douthitt received and based his
opinion on the medical evidence in the record.  The ALJ properly
explained the weight she gave to his opinions and also explained
that she added limitations based on Douthitt's testimony and
other evidence in the record.  Therefore, Douthitt has not shown
error in the ALJ's reliance on Dr. Kwock's opinion.

2.  Dr. Bassett[10]

Douthitt argues that the ALJ erred in not giving weight to
Dr. Bassett's restriction that Douthitt could not use his left
arm for work.[11]  Douthitt contends that Dr. Bassett is a treating
physician whose opinion is entitled to controlling weight.

---

[10] Douthitt also refers to Dr. Bassett as Dr. Barrette.

[11] To the extent Douthitt also challenges the weight given
to the opinion of state agency physician, Dr. Jaffe, the ALJ
explained that evidence entered into the record after Dr.
Jaffe's review did not support his limitations for handling but
did support additional limitations in postural activities.

The ALJ stated that no treating or examining provider submitted a function by function assessment of Douthitt's abilities and limitations.  She gave little weight to Dr. Bassett's opinion that Douthitt could not use his left arm for work because the record evidence did not support that limitation.  The record is replete with examination findings that Douthitt had a full range of motion in his left shoulder and lacks evidence that he could not use his arm to work.[12]  See § 404.1527(c)(2).

### 3.  NP Vicuna-Keady

Douthitt argues that the ALJ ignored the opinion provided by "Dr. Keady" but does not explain what opinion was ignored. The ALJ did address NP Vicuna-Keady's opinions that Douthitt was unable to work because of shoulder pain, diabetes, and severe depression.  The ALJ explained that she gave the opinions little weight because the opinions were conclusory; were on an issue that is reserved to the Commissioner, § 404.1527(d); and were contradicted by NP Vicuana-Keady's treatment notes on depression.  Douthitt does not dispute the accuracy of the ALJ's assessment but only argues that NP Vicuna-Keady's opinions "are

---

[12] Therefore, whether or not Dr. Bassett is a treating physician, the ALJ properly explained the weight given to his opinion.

evidence as they relate to the care he has been given."  Doc. 7-1, ¶ 48.

The ALJ did not err in her assessment of NP Vicuna-Keady's opinions.


D.  Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." § 404.1545(a)(1).  As stated above, the ALJ found that Douthitt had the RFC to do work at the light exertional level with the additional limitations that he would need to change positions while working; that he could never climb, kneel, or crawl; that he could reach overhead only occasionally with his left arm and could otherwise reach frequently; that he could not do firm grasping with his left hand; that he could push and pull frequently with his legs; and that he could have no concentrated exposure to potential hazards.  The ALJ also found that he could do routine, unskilled work but not fast-paced work.

Douthitt argues that the ALJ erred by not considering his mental and physical impairments in combination for purposes of the RFC.  He is mistaken.  The ALJ considered all of Douthitt's physical and mental diagnoses and impairments.  The ALJ found, based on the record evidence, that Douthitt's depression and anxiety were well controlled.  Douthitt's treatment notes

document Douthitt's normal mental functioning. The ALJ then considered Dr. Korgeski's opinion about restrictions in Douthitt's ability to work due to mental impairments.  She did not give weight to the limitation on working with the public because of the lack of record support.

Douthitt argues that his mental limitations caused him to forget to take his medications and to eat properly for diabetes. Although the record confirms that Douthitt occasionally forgot to take his medication for neuropathy, he cites no record evidence to show that his mental impairments caused that forgetfulness.[13]  Further, he has not shown that forgetting to take his medication and improper eating caused disabling impairment due to neuropathy or diabetes.

The ALJ's RFC assessment is supported by substantial evidence.  To the extent Douthitt challenges the hypothetical that the ALJ gave to the vocational expert, as he acknowledges, it was the same as the RFC finding.  Because substantial evidence supports the RFC finding, Douthitt has shown no error in the hypothetical.

---

[13] Only one of the cited pages pertains to forgetting to eat and take medication and does not attribute that forgetfulness to any mental impairment.

Conclusion

For the foregoing reasons, the claimant's motion to reverse the Commissioner's decision (document no. 7) is denied.  The Commissioner's motion to affirm (document no. 10) is granted. The decision is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

February 17, 2021

cc:  Counsel of record.

21